1   THOMAS J. SPEISS, III (SBN 200949)
      TSpeiss@SYCR.com
2   STRADLING YOCCA CARLSON & RAUTH, P.C.
3   100 Wilshire Blvd., 4th Floor
    Santa Monica, California 90401
4   Telephone:  (424) 214-7042
    Facsimile:  (424) 214-7010
5
    Attorneys for Plaintiff,
6   CARVER INTERNATIONAL, INC.

7

8                   **UNITED STATES DISTRICT COURT**

9            **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10                       **SOUTHERN DIVISION**

11

12   CARVER INTERNATIONAL,        **CASE NO.: 8:15-cv-1348**
13   INC., a California corporation,
                                    **COMPLAINT FOR:**
14              Plaintiff,
                                    1. **DECLARATORY RELIEF FROM**
15        vs.                         **TRADEMARK INFRINGEMENT**
                                      **UNDER SECTION 14 OF THE**
16   SURFSKATE INDUSTRIES, LLC,       **LANHAM ACT, 15 U.S.C. §1064;**
     a Florida Limited Liability      **and,**
17   Company,
                                    2. **UNFAIR COMPETITION UNDER**
18              Defendant.            **CALIFORNIA BUSINESS AND**
                                      **PROFESSIONS CODE § 17200.**
19

20

21                                  JURY TRIAL DEMANDED

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
    LAWYERS
  SANTA MONICA

---
                        **COMPLAINT**

DOCSSM/3018412v7/102624-0018

Plaintiff Carver International, Inc. ("Plaintiff" or "Carver"), by and through its attorneys, hereby alleges as follows:

## STATEMENT OF THE CASE

1.      Carver is a well-known skateboard industry leader, pioneering the surfskate industry.  Carver is engaged in the business of marketing and selling surfskate boards (*see* photographic graphic depiction below), athletic apparel; ball bearings for skateboards; nuts and bolts for skateboards; skateboard decks; skateboard grip tapes; skateboard riser pads; skateboard trucks; and, skateboard wheels (the "Carver Products").



2.      The term "surfskate," as used by the numerous companies in the surfskate industry, as well as industry consumers, describes a specific style of surfing and skateboarding.

3.      Upon information and belief, since at least as early as December 31, 1963, the term "surfskate" has been used by numerous industry pioneers and participants to generically describe the surfskate industry.  Surfskate is a generic term that is not capable of achieving trademark protection.

-1-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

**COMPLAINT**

a.    As depicted below, surfskate was described in <u>Skateboard Retrospective: A Collector's Guide</u>, R. NOLL (pub., 2000).  This book clearly describes surfskate (*see* "surfskate" page at below right).




A copy of the relevant portions of <u>Skateboard Retrospective: A Collector's Guide</u> is attached hereto as **Ex. A**.

b.    The term surfskate further was described in the book <u>DogTown: The Legend of the Z-Boys</u>, G. FRIEDMAN (pub., 2002).  Upon information and belief, this book contains a collection of stories originally published between 1975 and 1985 as they originally appeared in *Skateboarder Magazine*.  On p. 4 of this book, it states,

> . . . All of the people we hung with were into the same <u>surf-skate</u> approach, and we all surfed Jeff Ho's sticks out of the Zephyr shop. Jeff, Skip Engblom, and Jay's dad, Kent Sherwood, designed a low-center-of-gravity flex board to go along with the new style of skating. . . .  (Emphasis added.)

On p. 10 of this book, it states,

> Stacy Peralta is prototypical of the emerging new style in skateboarding today.  At 16 years, he has been riding skates 'off and on' since the age of six (after watching him, one suspects he was mostly on).  Stacy describes his early days as mostly "a downhill <u>surf-skate</u> style based around weight shifting.  (Emphasis added.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-2-
**COMPLAINT**

DOCSSM/3018412v7/102624-0018

A copy of the relevant portions of <u>DogTown: The Legend of the Z-Boys</u> is attached hereto as **Ex. B**.

4.      SurfSkate Industries, LLC ("SurfSkate" or "Defendant") obtained United States Federal registration of the trademark S SURFSKATE for "skateboards, skateboard trucks and skateboard decks," in Class 28, which was assigned United States Trademark Registration No. 3,839,107 ("SURFSKATE" or the "Mark").

5.      Since at least as early as <u>August 2, 2007</u> and continuing through the present, Carver has used the term surfskate to describe the surfskate industry.

6.      On or about <u>July 2, 2015</u>, Carver received "cease and desist" correspondence from an authorized distributor of Defendant demanding that it immediately cease all use of the term "surfskate."

## PARTIES

7.      Plaintiff Carver is a California corporation duly organized and existing under the laws of the State of California with its principal place of business at 111 Sierra Street, El Segundo, California  90245.

8.      Upon information and belief, Defendant SurfSkate is a Florida limited liability company located at 1545 Northpark Drive Suite 103, Weston, Florida 33326.

## JURISDICTION AND VENUE

9.      This is a civil action arising under the laws of the United States relating to trademarks (15 U.S.C. Sections 1114(1), 1117 and 1125(a)).  This Court has federal question jurisdiction pursuant to 28 U.S.C. Sections 1331, 1338(a) and (b) and 2201-02.  This Court has supplemental jurisdiction over Count II pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over Defendant pursuant to California Code of Civil Procedure Section 410.10.  Plaintiff is informed and believes, and thereon alleges, that Defendant has engaged in business activities in

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-3-

**COMPLAINT**

DOCSSM/3018412v7/102624-0018

1  California, and has substantial, continuous and systematic contacts with the State

2  of California, within the Southern Division of this Judicial District.

3         11.    Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391

4  (b)-(c) and 1400(b).  The acts and transactions complained of herein were

5  conceived, carried out, and had an effect within the State of California and within

6  the Southern Division of this Judicial District.

7  **GENERAL FACTUAL ALLEGATIONS**

8         12.    Since at least as early as <u>December 31, 1963</u>, the term "surfskate" has

9  been used by numerous industry pioneers and participants to generically describe

10  the surfskate industry.  Examples of such use include, but are not limited to, the

11  following,

12         a.    As depicted on <u>www.Sk8teboard.com</u>, in a post discussing

13  Makaha Skateboards, the advertising copy states,

> In 1963 Makaha Skateboards founder, Larry Stevenson, used his
> surfing skill and applied then to his skateboard and made the first
> modern skateboard.  Stevenson used his new "<u>surf skate</u>" to make it all
> the way to the Skateboard Hall of Fame.  Over 50 years have gone by
> and Makaha is still making some of the best, most innovative and
> highest quality skateboards and completes in the industry.  Continuing
> the original "surf skate" vibe Makaha still produces old school boards
> similar in shape to their original boards as well as high performance
> modern skateboard decks and completes.  (Emphasis added.)

19  A true and correct copy of this advertisement is attached hereto as **Ex. C**.

20         b.    On or about <u>August 2, 2007</u>, in announcing Carver's website, Neil

21  Stratton ("Stratton"), the co-founder of Carver, stated as follows in an e-mail to

22  surfskate compatriots,

> Carver Skateboards is proud to announce the launch of our new
> website. . . .  Also new to the site is a Friends section that will showcase
> videos and photos made by skaters riding Carver trucks, so submit your
> photos and edited footage and become part of the online <u>Surfskate</u>
> library.  (Emphasis added.)

26  / / /

27  / / /

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-4-
**COMPLAINT**

DOCSSM/3018412v7/102624-0018

A true and correct copy of this correspondence is attached hereto as **Ex. D**.
This advertisement also appeared in the <u>Fall 2007</u> edition of *Concrete Wave*, as
depicted below.



**CARVER**
Carver Skate-
boards is proud
to announce the
launch of their
new    website.
Located at our
original  address,
c a r v e r s k a t e -
boards.com,   it
features  the  full
line  of  products,
from       skate-
boards      and
trucks to apparel
and accessories. It also includes a new
Technical Specifications section on all the
trucks, as well as expanded Video and His-
tory pages. Also new to the site is a Friends
section that will showcase videos and
photos   made  by skaters riding Carver
trucks, so submit your photos and edited
footage and become part of the online Surf-
skate library. Carver has also introduced a
new complete called The Fish.
carverskateboards.com

A true and correct copy of this advertising copy is attached hereto as **Ex. E**.

  c.  On or about <u>September 14, 2007</u>, Carver described surfskate on its
website, <u>www.carverskateboards.com</u> as follows,

> Japanese pro surfer-turned-distributor Aki Takahama also really felt
> the deep relationship to surfing he got when riding Carver, so he took
> some of the boards to Japan to see if anyone there would feel the same
> way.  No one expected the intense response from the local shredders.
> Renowned Japanese pro-surfer Mineto Ushikoshi joined the Carver
> team, helping to design his own line of decks and graphics in
> conjunction with his U4 signature brand, and adding his technical
> surfing approach to the development of the Japanese <u>Surfskate</u> style. . .
> (Emphasis added.)

/ / /

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-5-

**COMPLAINT**

DOCSSM/3018412v7/102624-0018

1 A true and correct copy of this historic portion of the Carver website, which

2 was accessed through the Internet Archive, is attached hereto as **Ex. F**.

3         d.      In an article entitled "*Design Maverick:  An Interview With Neil*

4 *Stratton of Carver Skateboards*," which appeared in the <u>Winter 2008</u> edition of

5 *Concrete Wave*, Mr. Stratton states, in discussing his surfskate products,

6
7
8
9
10
11
> . . . I wanted to spread that same feeling that I was craving, that
> sweaty high you get from skating a steep hill or surfing a great wave.
> But I came to it as an adult, so my needs were different.  It wasn't
> about rebelling, or making a statement of identity, but simply about
> dropping my board on the pavement and surfing my skateboard on the
> hills in my neighborhood.  I wanted to give that experience to a new
> generation of skaters who weren't around in the <u>surfskate</u> heyday, and
> include the older guys who grew up skating, but for whom skating had
> evolved to a place we couldn't relate to anymore. . . .  (Emphasis
> added.)

12 A true and correct copy of this article, an image of which is depicted below, is

13 attached hereto as **Ex. G**.





**COMPLAINT**

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

DOCSSM/3018412v7/102624-0018

d.     In a blog post that is dated <u>April 30, 2008</u>, entitled "*Carver is the original Surfskate front truck system,*" which appeared on the Calstreets website, it states,

> Carver was founded on the historical connection between Surfing and Skating, and through technological innovation has brought that connection back with our comprehensive line of trucks and boards. For over a decade, Carver has been on the forefront of skateboarding technology, developing equipment designed to excel on this evolving landscape.  Carver is the original <u>Surfskate</u> front truck system, now copied all over the world.  (Emphasis added.)

A true and correct copy of this article is attached hereto as **Ex. H**.

e.     In a press release issued on or about <u>September 2, 2008</u>, Carver states,

> When Carver was first introduced at ASR San Diego that fall of 2001, the new company was surprised by the overwhelming interest and sales from Japan.  Widely regarded as early adopters . . . the Japanese quickly created a vibrant scene around this '<u>surfskate</u>' board.  (Emphasis added.)

A true and correct copy of this press release is attached hereto as **Ex. I**.

f.     In e-mail correspondence dated <u>October 17, 2008</u> and sent from Aki Takahama to Neil Stratton, Mr. Takahama states,

> For the idea of having special edition for younger generation, I am not too sure . . .  In Japan, Carver being <u>surf skate</u> and keeping its special character is a core.  (Emphasis added.)

A true and correct copy of this correspondence is attached hereto as **Ex. J**.

h.     In <u>December 2009</u>, in an advertisement, Carver discussed its support of the United States manufacturing industry.  In this advertisement, Carver stated,

> . . . What this means for you, our riders, is that you're not only getting the highest quality products made by the people who surf and skate them, but you're supporting the hundreds of local factories and suppliers we rely on to produce the best <u>surfskate</u> in the world.  (Emphasis added.)

A true and correct copy of this advertisement, a copy of which is depicted on the next page, is attached hereto as **Ex. K**.

/ / /

**COMPLAINT**

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

DOCSSM/3018412v7/102624-0018



i.      Gravity Skateboards, in an advertisement, states, "The Rubberman himself, Larry Bertlemann has collaborated with Gravity in creating an amazing <u>surfskate</u>." (Emphasis added.)  A true and correct copy of this advertisement is attached hereto as **Ex. L**.

j.      Lost skateboards, which markets and sells the Birdy skateboard. In advertising copy for this skateboard, it states, "A smaller Mini Kick 24 'x7' deck provides a <u>SurfSkate</u> that you can cruise in comfort and stash your board once you reach you destination. . . ."   A true and correct copy of this advertisement is attached hereto as **Ex. M**.  (Emphasis added.)

k.      In an article entitled, *"Why ...Lost Skateboards???? Why Not?,"* which was published by <u>Real Watersports</u> on <u>March 9, 2011</u>, Matt "Mayhem" Bilos states,

/ / /

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-8-

**COMPLAINT**

DOCSSM/3018412v7/102624-0018

Most "surf style" skateboards are labeled rarely proportionate to an actual surfboard. They sure as hell weren't designed or shaped by a surfboard shaper.  Even the graphics don't seem like something you'd see on a real surfboard. . . .  These decks are a surf inspired ride that takes skateboarding back to its roots as an offshoot of surfing. . . . We cut templates and shaped the first prototypes by hand. From these design files and prototypes, we custom created our own molds for each deck to create what we call not 'Longboards' or 'Cruisers' but our own category "<u>SurfSkates</u>".  (Emphasis added.)

A true and correct copy of this article is attached as **Ex. N**.

l.      The publication *Longboarder Labs* states, "This Carver Skateboard is SURFSKATING as it should be. . . ."  A true and correct copy of this article is attached as **Ex. O**.

13.      Defendant has used the term "surfskate" to falsely mislead customers into believing that it is the only market participant that markets and sells surfskate products.

14.      The use of the Mark in United States commerce and its ancillary Federal registration wrongfully create the appearance that Defendant has the exclusive right to the use of the term "surfskate" in connection with its surfskate goods, to the detriment of Plaintiff and numerous other companies within this industry.

<u>**RELEVANT FACTS FOR CARVER**</u>

15.      Carver Skateboards is a well-known skateboard industry leader, pioneering the surfskate industry.

16.      Since at least as early as <u>January 1, 2004</u>, Carver has worked with several renowned surfers and skateboarders, including: the USA Surf Team; Courtney Conlogue, who is the No. 1 ranked women's surfer in the world; legendary surfer Laird Hamilton ("Hamilton") (who is pictured on the next page riding a Carver surfskate board); Carlsbad, California-based competitive surfer Taylor Knox (who also is pictured on the next page riding a Carver surfskate board); Japanese pro surfer-turned-distributor Aki Takahama; and additional notable individuals such as Josh Kerr, Jake Davis, and Tyler Hatzikian.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-9-

**COMPLAINT**

DOCSSM/3018412v7/102624-0018

1
2
3
4
5
6
7
8
9
10
11



12
13
14
15
16
17
18
19
20
21
22
23



24      17.     Carver markets and sells the Carver Products in over 1,000 locations
25  in 26 countries including within the United States, and internationally — including
26  in Australia, Japan, New Zealand and Poland.
27      18.     Carver has established a reputation and goodwill in its business of
28  marketing and selling its Carver Products.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-10-

**COMPLAINT**

DOCSSM/3018412v7/102624-0018

19.     Carver diligently works to maintain its reputation and goodwill by delivering authentic Carver Products under its registered trademarks.

20.     Carver protects its products and its reputation against would-be knock-offs or competitors which may infringe upon Carver's intellectual property rights.

21.     Since at least as early as <u>August 2, 2007</u> and continuing through the present, Carver has used the term "surfskate" to describe the surfskate industry.

## <u>RELEVANT FACTS FOR SURFSKATE</u>

22.     Upon information and belief, Colin O. Newton is the Founder of Defendant.

23.     On <u>August 13, 2009</u>, Defendant filed an intent-to-use application with the United States Patent and Trademark Office ("USPTO") for S SURFSKATE, U.S. Trademark Application No. 77/804,091, in connection with "skateboards, skateboard trucks and skateboard decks," in Class 28.

24.      On <u>November 19, 2009</u>, the USPTO trademark examining attorney issued the following statement,

> In accordance with the authorization granted by William Hilton on <u>November 18, 2009</u>, the application has been AMENDED as indicated below. . . .  If the identification of goods and/or services has been amended, please note that any future amendments must be in accordance with 37 C.F.R. §2.71(a) and TMEP 1402.07(e).  <u>The applicant asserts the term SURFSKATE has no meaning or significance in the trade, other than trademark significance</u>.  (Emphasis added.)

Upon information and belief, the above statement that "the term SURFSKATE has no meaning or significance in the trade, other than trademark significance" was incorrect at the time it was made.

25.     On <u>July 12, 2010</u>, Defendant filed a Statement of Use with the USPTO with a date of first use anywhere at least as early as <u>July 9, 2010</u> and the date of first use in commerce at least as early as <u>July 9, 2010</u>.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-11-
**COMPLAINT**

DOCSSM/3018412v7/102624-0018

26.    On <u>August 24, 2010</u>, this application was registered in connection with "skateboards, skateboard trucks and skateboard decks," in Class 28, and was assigned United States Trademark Registration No. 3,839,107.  A copy of the registration certificate is attached as **Ex. P**.  A copy of the current status is attached as **Ex. Q**.

## **FIRST CLAIM FOR RELIEF**

*(Declaratory Judgment for Trademark Non-Infringement,
Section 14 of the Lanham Act, 15 U.S.C. §1064)*

27.     Carver hereby realleges and incorporates by reference each of the allegations from paragraphs 1 through 26 hereof as if fully stated herein.

28.    The term "surfskate" in United States Trademark Registration No. 3,839,107 is generic when used on or in connection with the goods recited in United States Trademark Registration No. 3,839,107.

29.    An actual case or controversy exists by virtue of Defendant's allegation that Carver is violating Defendant's Mark and demand that Carver "cease and desist" all such use of the Mark to market, advertise and sell its surfskate products.

30.    Carver denies any violation of Defendant's alleged trademark rights in Defendant's Mark and further denies that any of its action since at least as early as <u>August 2, 2007</u> amount to infringement of Defendant's purported rights in and to the Mark.

31.    Carver is informed and believes, and thereon alleges, that there is no likelihood of confusion between Defendant's alleged trademark rights and Carver's manufacture, advertisement or sale of surfskate products because Defendant does not have any valid or enforceable trademark rights in the Mark because of Defendants' failure to meet the Lanham Act statutory requirement that a mark must not be generic in order to be registered.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-12-
**COMPLAINT**

DOCSSM/3018412v7/102624-0018

32.     Unless Plaintiff is found not to infringe the Mark, or unless said trademark is adjudged invalid or unenforceable, a cloud of doubt will exist in the minds of Carver's customers and potential customers — as well as throughout the surfskate industry — regarding Carver's and others' lawful right to continue to use the term surfskate to describe surfskate products.

33.     Carver is entitled to a judicial declaration that it does not infringe any valid common law trademark rights held by the Defendant.

### SECOND CLAIM FOR RELIEF

*(Unfair Competition under Cal. Bus. & Prof. Code §§ 17200 et seq.)*

34.     Carver repeats and re-alleges each and every allegation contained in Paragraph Nos. 1 through 33 hereof as if fully stated herein.

35.     Carver is informed and believes, and on that basis alleges, that SurfSkate has intentionally misappropriated the term "surfskate," with the intent of causing confusion, mistake, and deception as to the source of all goods within the surfskate industry, and, upon information and belief, to point surfskate industry consumers to Defendant's "surfskate" products for purchase of those products, and, as such, SurfSkate has committed unfair competition in violation of California Business and Professions Code §§ 17200 *et seq.*

36.     The foregoing acts of SurfSkate have caused and will continue to cause injury to Carver by depriving Carver of sales of its genuine surfskate goods, injuring its business reputation, and by confusing industry participants into believing, mistakenly, that the term 'surfskate" solely describes Defendant and its goods, when — since at least as early as <u>December 31, 1963</u> — the term surfskate has been used generically to describe an *entire industry* and the goods offered for sale by surfskate industry participants, all in violation of California Business and Professions Code §§ 17200 *et seq.*

37.     Defendant's acts have caused and will continue to cause irreparable harm and damage to Carver, and have caused and will continue to cause Carver

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

**COMPLAINT**

DOCSSM/3018412v7/102624-0018

1   monetary damage in an amount not yet determined, including restitution and

2   attorneys' fees and costs under California Business and Professions Code

3   §§ 17200 *et seq.*

4        38.    Defendant's actions described herein constitute "unlawful, unfair or

5   fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading

6   advertising" within the meaning of California Business and Professions Code

7   §§ 17200 *et seq.*

8        39.    As a consequence of Defendant's actions, Carver is entitled to

9   injunctive and monetary relief under California Business and Professions Code

10   §§ 17200 *et seq.*

11              <u>**PRAYER FOR RELIEF**</u>

12        WHEREFORE, Plaintiff prays for the following relief:

13        A.    A judgment and order declaring that Carver's use, manufacture,

14   advertisement and sale of products under the trademark SURFSKATE does not

15   infringe any trademark rights held by the Defendant;

16        B.    A judgment and order declaring that Defendant's Mark is invalid;

17        C.    A judgment and order declaring that Defendant's Mark is

18   unenforceable and cancelling it;

19        D.    A determination that Defendant's conduct unfairly competes with the

20   property of Carver under California Business and Professions Code §§ 17200 *et*

21   *seq.* and the common law of the State of California;

22        E.    That Defendant and its agents, officers, directors, servants,

23   employees, attorneys, successors, assignees, and all others in active concert or

24   participation with Defendant be preliminarily and permanently enjoined from

25   directly or indirectly:

26        i.    Committing any act which, in and of itself, or from the manner

27   or under the circumstances in which it is done amounts to false designation

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-14-

**COMPLAINT**

DOCSSM/3018412v7/102624-0018

of origin, false description, or false representation of surfskate industry goods; and,

ii.     Otherwise unfairly competing with Carver or misappropriating Carver's intellectual property; and, furthermore,

iii.     Ordering Defendant to cease using the Mark on the surfskate goods Defendant markets and sells as a signifier of source or origin of those goods.

F.     That the Court issue an Order directing Defendant to file with the Court and serve on Carver, within thirty days of service on Defendant of the above-listed injunction, a report in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

G.     That the Court require Defendant to notify its parent, subsidiaries, affiliates, commercial associates, dealers, dealer advertising associations, advertising agencies, suppliers, and customers of said Order;

H.     That the Court award judgment in favor of Carver for the amount of either damages sustained by Carver or the profits made by Defendant as a result of Defendant's wrongful conduct, whichever amount is greater, and damages in an amount necessary for Carver to conduct corrective advertising to eliminate the confusion caused by Defendant's wrongful acts;

I.     That the Court award judgment against Defendant for the full costs of this action, including reasonable attorneys' fees and costs; and,

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-15-

**COMPLAINT**

DOCSSM/3018412v7/102624-0018

1        J.     That the Court order such other, further, and different relief as the

2 nature of this action may require and that the Court deems just and proper.

3

4 DATED:  August 24, 2015       STRADLING YOCCA CARLSON
                      & RAUTH, P.C.

5

6

7                          By: _____

8                            Thomas J. Speiss, III
                           Attorneys for Plaintiff

9                            Carver International, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-16-
**COMPLAINT**

DOCSSM/3018412v7/102624-0018

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY DEMAND**

     Plaintiff Carver International, Inc. hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure on each cause of action asserted in its Complaint that is triable by jury.

DATED:  August 24, 2015        STRADLING YOCCA CARLSON
                         & RAUTH, P.C.

By: _____
       Thomas J. Speiss, III
       Attorneys for Plaintiff
       Carver International, Inc.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
SANTA MONICA

-17-

**COMPLAINT**

DOCSSM/3018412v7/102624-0018